IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| MICHAEL J. SWARTZENDRUBER, for himself and on behalf of others similarly situated, | ) ) ) ) | Case No. 5:22-cv-055 |
| Plaintiff, | ) ) | By:    Michael F. Urbanski |
| | ) | Chief United States District Judge |
| v. | ) ) | |
| SENTARA RMH MEDICAL CENTER, RMH MEDICAL GROUP, LLC, UNITED HEALTHCARE INSURANCE COMPANY, and UNITED HEALTHCARE OF THE MID-ATLANTIC, INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on a Motion to Dismiss, ECF No. 35, by defendants RMH Medical Group, LLC ("RMH Medical") and Sentara RMH Medical Center ("Sentara RMH") (collectively, the "Sentara Defendants") and a Motion to Dismiss, ECF No. 37, by defendants UnitedHealthcare Insurance Company and UnitedHealthcare of the Mid-Atlantic, Inc. (collectively, the "United Defendants").

For the foregoing reasons, the Sentara Defendants' Motion to Dismiss, ECF No. 35, is **GRANTED** in part as to Counts Four and Five and **DENIED** in part as to Count Three; and the United Defendants' Motion to Dismiss, ECF No. 37, is **GRANTED** in part as to Count Two, and **DENIED** in part as to Counts One and Three. This opinion in no way bears on the issue of class certification.

## I. Background

1

The following facts are drawn from plaintiff Michael Swartzendruber's Amended Complaint. ECF No. 32. Swartzendruber seeks to bring a class action related to alleged systematic overcharging by the defendants for medical services provided by RMH Medical for those insured by the United Defendants. Id. at ¶ 1.

At its core, Swartzendruber's complaint stems from misrepresentations about the location of medical care that his medical providers—the Sentara Defendants—made to his insurer—the United Defendants—leading his insurer to process his care under the wrong provider contract and Swartzendruber to pay higher out-of-pocket medical costs.

Swartzendruber summarizes his injury as follows:

> Instead of billing those services as provided by RMH Medical . . . at its many outpatient centers, Sentara [RMH] bills them as if they were provided at the main Sentara RMH hospital. This improper billing results in an overcharge. Despite being repeatedly put on notice of this practice, United Healthcare Insurance Company does not correct the bills.

Id.

Swartzendruber received employer-sponsored health insurance coverage through the United Defendants. Id. at ¶¶ 25–27. Given the share of the market dominated by the United Defendants, his employer may again choose to offer their plans to employees. Id. at ¶ 32.

The United Defendants have distinct contracts with Sentara RMH and RMH Medical that govern how much beneficiaries will be billed for care by each provider. Id. at ¶¶ 33–37. The agreed-upon rate between the United Defendants and RMH Medical is lower than the agreed-upon rate between the United Defendants and Sentara RMH. Id. at ¶ 38. The defendants agreed that the contracts were confidential. Id. at ¶ 39. The United Defendants, however, maintain a website on which beneficiaries may check the cost for medical services

at covered providers. Id. at ¶ 41–42. This website indicates that the costs for the same services are lower at RMH Medical than at Sentara RMH's main hospital. Id. at ¶ 43.

RMH Medical and Sentara RMH are related entities and Sentara RMH manages both the billing and communications with insurance companies for medical services provided at RMH Medical outpatient centers. Id. at ¶¶ 44–45. Sentara RMH bills services performed at RMH Medical outpatient centers as if they were performed at the Sentara RMH main hospital. Id. at ¶ 46. The United Defendants then process and pay these claims at the higher rate negotiated with Sentara RMH, resulting in the overcharging of beneficiaries. Id. at ¶¶ 47–48.

On September 10, 2019, Swartzendruber had bloodwork done at the East Market Street outpatient RMH Medical location, which was covered by the RMH-United contract, not the Sentara RMH-United contract. Id. at ¶¶ 49–54. The Sentara Defendants falsely informed the United Defendants that the medical services had been provided at the Sentara RMH main hospital. Id. at ¶¶ 55–56. This false statement causes the United Defendants to bill Swartzendruber $152.64 for the medical services, far more than he should have been billed for the service provided at the RMH Medical outpatient center. Id. at ¶¶ 58–59. Despite Swartzendruber's attempt to correct the overbilling, the Sentara Defendants insisted that they had charged the negotiated rate and never lowered it. Id. at ¶¶ 60–62. Before ultimately paying the charge to keep it from going to collections, Swartzendruber repeatedly informed the United Defendants—through phone calls and written appeals—that their website stated that the charge for the services at RMH Medical was less than he was billed. Id. at ¶¶ 64–66. Fearing a billing error, Swartzendruber also requested that the United

Defendants share details about how the Sentara Defendants had billed the services, but the United Defendants repeatedly responded that they had processed the claim properly based on the submission they had received from the Sentara Defendants. Id. at ¶¶ 67–68. Swartzendruber made a similar request, in writing, for more information about how the claim was billed to the Sentara defendants, who refused to respond. Id. at ¶¶ 69–70.

Swartzendruber then filed an action against the Sentara Defendants in state court for the overbilling. Id. at ¶¶ 71–72. The Sentara Defendants insisted that the services had been properly billed and that there was only a single set of negotiated rates with the United Defendants, regardless of whether services were provided at the Sentara RMH main hospital or an RMH Medical outpatient center. Id. at ¶¶ 73–74. After the Sentara Defendants provided what they represented was that single contract to Swartzendruber pursuant to a confidentiality agreement, Swartzendruber nonsuited his case. Id. at ¶¶ 75–76.

Swartzendruber then filed an action against the United Defendants based on the discrepancy between the amounts the United Defendants told Swartzendruber he would be charged for services at the RMH Medical outpatient facilities versus at the Sentara RMH main hospital. Id. at ¶ 77. Directly contradicting what the Sentara Defendants had told him, the United Defendants told Swartzendruber that there were, in fact, two contracts: one for the East Market Street RMH Medical outpatient center and one for the Sentara RMH main hospital. Id. at ¶ 78. The United Defendants also provided copies of these contracts to Swartzendruber under a confidentiality agreement. Id. at ¶ 79. Because his claims were based on the premise that there was only one contract, Swartzendruber nonsuited this second case. Id. at ¶ 81.

On June 21, 2021, Swartzendruber had blood work done at the South Main Street outpatient center run by RMH Medical. Id. at ¶ 84. The Sentara Defendants again falsely informed the United Defendants that the services had been performed at the main hospital, causing Swartzendruber to be billed $221.76 instead of the lower rate. Id. at ¶¶ 85–91. Swartzendruber again tried to appeal the charges with the United Defendants, going so far as to file a complaint with the Commonwealth of Virginia's Bureau of Insurance. Id. at ¶¶ 95–99. Because the bill appeared as if the services had been performed at the main hospital, the state took no action. Id. at ¶ 98.

Finally, Swartzendruber alleges that Sentara RMH and RMH Medical are related, but separate legal entities who at times use the same fictitious business names. Id. at ¶¶ 101–07. When a person with insurance through the United Defendants goes to an RMH Medical outpatient center, they receive a contract indicating that the contract is with "Sentara RMH Medical Group." Id. at ¶ 110. Both Sentara RMH and RMH Medical do business under this name. Id. at ¶ 111.

Based on these facts, Swartzendruber brings several claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). First, Swartzendruber brings a class claim against the United Defendants seeking to recover the benefits due under the plan (Count One); a claim for breach of fiduciary duty against the United Defendants on behalf of the plan (Count Two); and a class claim against all defendants seeking resubmission of claims for processing based on the proper location of the service (Count Three). Swartzendruber further claims that Sentara RMH and RMH Medical violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") that caused injury through overbilling

to Swartzendruber and putative class members (Count Four). Finally, Swartzendruber claims that the Sentara Defendants violated the Virginia Consumer Protection Act ("VCPA") by misrepresenting both the amounts owed and the location at which the service was provided (Count Five).

## II. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Id. at 679; see also Simmons v. United Mortg. & Loan Invest., 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true, see Albright v. Oliver, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff. See Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), conclusory allegations devoid

6

of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). "'Thus, in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of the allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" Zak v. Chelsea Therapeutics Int'l Ltd, 780 F.3d 597, 606 (4th Cir. 2015) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)). However, the court may consider documents outside of the amended complaint if they are "integral to the Complaint" and there is no dispute regarding their authenticity. Goines v. Valley Comm. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A document is "integral to the Complaint" where the Complaint "relies heavily upon its terms and effect . . . ." Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

A challenge to standing is evaluated under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Article III of the Constitution permits federal courts to adjudicate only "actual cases and controversies." Allen v. Wright, 468 U.S. 737, 750 (1984). The constitutional standing doctrine gives effect to this requirement by "ensur[ing]

that a plaintiff has a sufficient personal stake in a dispute to render judicial resolution appropriate." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 153 (4th Cir. 2000) (en banc). To establish constitutional standing, a plaintiff must have (1) suffered an injury-in-fact that is (a) concrete and particularized and (b) actual or imminent; (2) the injury must be fairly traceable to the challenged action of the defendant; and (3) the injury must be likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

### III.    Analysis

### A.  Count One

Swartzendruber states a claim upon which relief can be granted in Count One. Pursuant to ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B),[1] "a participant or beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); see Rose v. PSA Airlines, Inc., No. 21-2207, 2023 WL 5839282, at *3 (4th Cir. Sept. 12, 2023) (noting that ERISA § 502(a)(1)(B) is designed for plaintiffs to "seek reimbursement—'recovery'—for out-of-pocket expenses"). Swartzendruber seeks to recover under this provision, claiming that:

> [Swartzendruber] and each member of the putative class were participants or beneficiaries entitled to the benefits of a plan regulated by ERISA. The plan benefits included that medical services provided by an outpatient center associated with RMH Medical would be billed pursuant to the negotiated rate between United Healthcare and RMH Medical.

---

[1] "[I]n keeping with the trend in this practice area," the court refers to ERISA's provisions "by their ERISA designation, not by their place in the U.S. Code." Rose v. PSA Airlines, Inc., No. 21-2207, 2023 WL 5839282, at *2 n.2 (4th Cir. Sept. 12, 2023).

Am. Compl., ECF No. 32, at ¶ 121. Swartzendruber alleges that he and the members of his putative class were entitled to the lower rate negotiated between the United Defendants and RMH Medical, but that medical services were instead billed at the higher rate negotiated between the United Defendants and Sentara RMH.

The United Defendants make three arguments in favor of dismissing Count One: (1) that Swartzendruber did not sufficiently identify a provision of the plan; (2) that Swartzendruber did not sufficiently exhaust his administrative remedies; and (3) that Swartzendruber's claim does not fall under ERISA. All three arguments fail.

First, the United Defendants argue that Swartzendruber has failed to state a claim because he does not "identify . . . any provisions of the Plan governing documents entitling him to the benefits he claims." United Defs.' Mot. Dismiss Am. Compl., ECF No. 37, at 18. In some Circuits, "[t]o plead a violation of [§ 502(a)(1)(B)], a plaintiff must allege the existence of an ERISA plan,' and identify the provisions of the plan that entitle them to benefits." Doe v. CVS Pharmacy, Inc., 982 F.3d 1204, 1213 (9th Cir. 2020) (cleaned up).

However, "[t]he Fourth Circuit has not addressed what a plaintiff must allege to sufficiently state a claim for recovery of benefits." L.L. v. Medcost Benefit Servs., No. 1:21-CV-00265-MR, 2023 WL 362391, at *4 (W.D.N.C. Jan. 23, 2023). Several courts in this circuit have held that a pincite to a Plan provision is not required. See Jordan v. MEBA Pension Tr., No. CV ELH-20-3649, 2021 WL 4148460, at *27–28 (D. Md. Sept. 10, 2021) ("Jordan's [§ 502(a)(1)(B) claim] does not fail merely because he has not, at [the motion to dismiss stage], cited with specificity the specific provision he alleges entitles him to the disputed [benefit]."); Colin v. Marconi Commerce Systems Employees' Retirement Plan, 335

F. Supp. 2d 590, 604 (M.D.N.C. 2004) (declining to dismiss a claim for failure to cite a specific provision).

Further, Swartzendruber states that, according to his plan benefits, the services at RMH medical "would be billed pursuant to the <u>negotiated rate between United Healthcare and RMH Medical.</u>" Am. Compl., ECF No. 32, at ¶ 121 (emphasis added). This appears to be a reference to the following statement in his Plan, found in both the 2019 and 2021 Certificates for Coverage:[2] "When Covered Health Care Services are received from a Network Provider, Allowed Amounts are our <u>contracted fee(s) with that provider.</u>"[3] ECF No. 18-1, at 37 (emphasis added); ECF No. 18-2, at 38 (emphasis added). As alleged in the Amended Complaint, RMH Medical and Sentara RMH are separate providers with separate contracts with the United Defendants. Therefore, Swartzendruber has sufficiently alleged that he was entitled to payment under the United Defendants' contract with RMH Medical.

Second, the United Defendants claim that Swartzendruber did not allege facts sufficient to demonstrate administrative exhaustion of his claim. ECF No. 37, at 20. "Although 'ERISA does not contain an explicit exhaustion provision,' 'an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132.'" <u>Wilson v. UnitedHealthcare Ins. Co.</u>, 27 F.4th 228, 241 (4th Cir. 2022) (quoting <u>Makar v. Health Care Corp. of Mid-Atlantic</u>, 872 F.2d 80, 82 (4th Cir. 1989)).

---

[2] The court may consider these Plan documents, because the Plan documents are not only integral to the Amended Complaint, but there is no question as to their authenticity, as they were filed by the United Defendants, ECF No. 18, and relied on by Swartzendruber. ECF No. 42, at 5. <u>Goines</u>, 822 F.3d at 166.

[3] Swartzendruber refers specifically to this language in his Memorandum in Opposition to United Defendants' Motion to Dismiss, ECF No. 42, at 5.

Here, Swartzendruber alleges that he engaged in "repeated phone calls and repeated written appeals through the entire appeal process at United Healthcare," that he "repeatedly asked United Healthcare to provide the details" about how the claim was billed, and that the United Defendants "repeatedly responded" that they "had processed his claim properly based on how it was submitted by Sentara." Am. Compl., ECF No. 32, at ¶¶ 65–68; 95–98. When Swartzendruber was allegedly overcharged a second time, at the South Main Health Center, he appealed all the way through the Commonwealth of Virginia's Bureau of Insurance. Id. at ¶¶ 98–99. The disposition of this appeal referenced the United Defendants' explanation, stating, in effect, "that the variation in the cost was because the medical services were billed as if they were performed at the main hospital . . . rather than at an outpatient location." Id. at ¶ 100.

A plaintiff's failure to exhaust his administrative remedies under ERISA is an affirmative defense. Rogers v. Unitedhealth Grp., Inc., 144 F. Supp. 3d 792, 802 (D.S.C. 2015).

> The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, and rarely will this involve assessing the sufficiency of defenses." [Taylor v. Oak Forest Health & Rehab., LLC, No. 1:11-CV-471, 2013 WL 4505386, at *3 (M.D.N.C. Aug. 22, 2013).] "The burden of establishing an affirmative defense rests with the defendant, and 'a motion to dismiss filed under [Rule] 12(b)(6) . . . generally cannot reach the merits of an affirmative defense.'" Id. (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc)). There are "'relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint.'" Id. (quoting Goodman, 494 F.3d at 464).

Id. at 802–03. At this stage, Swartzendruber has alleged facts sufficient to make administrative exhaustion plausible, and "the facts pleaded in the Amended Complaint do

not permit the court to rule on this affirmative defense." <u>Smith v. Michelin N. Am., Inc.</u>, No. 3:20-CV-02850-JMC, 2022 WL 719613, at *3 (D.S.C. Mar. 10, 2022).

Third, the United Defendants argue that Swartzendruber has no ERISA § 502(a)(1)(B) claim against the United Defendants as his claims are not actually based on his ERISA plan, but rather on the contracts between the United Defendants and Swartzendruber's healthcare providers. ECF No. 43, at 8–9. This argument was raised for the first time in United Defendant's rebuttal brief. The United Defendants rely on <u>Lone Star OB/GYN Assocs. v. Aetna Health Inc.</u>, 579 F.3d 525, 532 (5th Cir. 2009), for the proposition that where "a medical service is determined to be covered and the only remaining issue is the proper contractual rate of payment, coverage and benefit determinations are not implicated and the claims are not [subject to ERISA]." <u>See</u> ECF No. 43, at 9. However, this dispute centers on a benefit determination: whether Swartzendruber's plan entitled him to the benefit of United Defendants' contract with RMH Medical—where he actually received medical services—instead of United Defendants' contract with Sentara RMH.

### B. Count Two

Under ERISA § 502(a)(2), codified at 29 U.S.C. § 1132(a)(2), "[a] civil action may be brought--by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." Swartzendruber claims that the United Defendants violated their fiduciary duty of care, skill, prudence, and diligence, as set forth in 29 U.S.C. § 1104(a)(1)(B), because the United Defendants knew or should have known that the Sentara Defendants were billing pursuant to the wrong contract but failed to take steps to ensure

that plan beneficiaries received the benefits due, resulting in overcharging beneficiaries. Am. Compl., ECF No. 32, at ¶¶ 131–37. To remedy this breach, Swartzendruber asks that the court require the United Defendants to reprocess the improperly submitted claims, provide a new explanation of benefits for each claim, and act in a manner consistent with that explanation. Id. at ¶ 139. Further, Swartzendruber seeks to hold United responsible for the out-of-pocket losses this alleged breach of fiduciary duty caused Plan members. Id. at ¶ 140.

Swartzendruber lacks standing to bring this claim. Claims for breach of fiduciary duty under § 502(a)(2) must seek recovery on behalf of the Plan. Peters v. Aetna Inc., 2 F.4th 199, 216 (4th Cir. 2021), cert. denied sub nom. OptumHealth Care Sols. v. Peters, 142 S. Ct. 1227 (2022). The relief Swartzendruber seeks would flow not to the Plan, but directly to Swartzendruber and other similarly situated Plan participants. Compl., ECF No. 32, at ¶¶ 139–40.

Swartzendruber attempts to skirt this hurdle by arguing that the right to pay the rate negotiated between United and a specific provider is a Plan asset, and that Swartzendruber "seeks to protect the contractual right in the [P]lan for all its participants to pay only the negotiated rate." Pl.'s Mem. Opp. United's Mot. Dismiss, ECF No. 42, at 10–11. This novel argument fails. According to ERISA, the term "plan assets" is "defined by such regulations as the Secretary may prescribe." 29 U.S.C. § 1002(42). Neither of the applicable regulations encompasses Swartzendruber's notion of a right to a negotiated rate. See 29 C.F.R. § 2510.3-101 (defining plan assets as plan investments); 29 C.F.R. 2510.3-102 (defining plan assets as participant contributions). While Swartzendruber cites one case for the proposition that Plan assets should be determined by "ordinary notions of property rights under non-ERISA law,"

13

Gordon v. CIGNA Corp., 890 F.3d 463, 472 (4th Cir. 2018), he provides no authority—and the court's research has identified none—suggesting a property right here.

### C. Count Three

Swartzendruber brings Count Three pursuant to ERISA § 502(a)(3), codified at 29 U.S.C. § 1132(a)(3). This provision "serves as a 'catchall,' offering "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."" Jordan, 2021 WL 4148460, at *12 (quoting Varity Corp. v. Howe, 516 U.S. 489, 512 (1996)). Pursuant to this provision, a civil action may be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3).

Swartzendruber brings this claim against both United and Sentara, arguing that Swartzendruber and each member of the class was entitled to certain Plan benefits, including that medical services at a given location—RMH Medical—would be billed pursuant to the negotiated rate between United and that location, and that the Sentara Defendants' misrepresentations and United Defendants' failure to take action, Swartzendruber and his putative class members were deprived of these benefits. Am. Compl., ECF No. 32, at ¶ 141. Swartzendruber seeks equitable relief requiring Sentara to resubmit the claims to United accurately identifying the service location and requiring United to reprocess the claims and provide new explanations of benefits. Id. at ¶ 148. Swartzendruber further requests an injunction requiring both United and Sentara to act in accordance with that explanation. Id.

The United Defendants challenge this claim under Rules 12(b)(1) and 12(b)(6), while the Sentara Defendants seek to dismiss this claim under Rule 12(b)(6).

### 1. Standing

The United Defendants argue that Count Three must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because Swartzendruber—as a former United Plan member—lacks standing to seek prospective injunctive relief. ECF No. 37, at 24. Generally, when a plaintiff seeks prospective injunctive relief, he must "show a sufficient likelihood that [he] will be affected by the allegedly unlawful conduct in the future." Kuei-I Wu v. Mamsi Life & Health Ins. Co., 269 F.R.D. 554, 564 (D. Md. 2010). Under this theory, since Swartzendruber is no longer a Plan participant, he could not possibly show future harm.

However, Swartzendruber has standing because he seeks not prospective, but retrospective injunctive relief. In the ERISA context, "[c]ourts recognize that plaintiffs possess standing to seek a retrospective injunction in the form of a reprocessing order because: (1) Plaintiffs allege an injury-in-fact in the form of deprivation of health benefits to which they were entitled; (2) a causal connection exists between the injury Plaintiffs complain of"—here, Sentara Defendants' misrepresentations and the United Defendants' failure to ensure accurate bills—"and (3) it is likely, as opposed to speculative, that a reprocessing order will redress Plaintiffs' injuries." Briscoe v. Health Care Serv. Corp., 337 F.R.D. 158, 162 (N.D. Ill. 2020) (citing Meidl v. Aetna, Inc., No. 15-CV-1319 (JCH), 2017 WL 1831916, at *6 (D. Conn. May 4, 2017)); see also Bailey v. Anthem Blue Cross Life & Health Ins. Co., No. C 16-04439 JSW, 2018 WL 10604451, at *3 (N.D. Cal. Dec. 7, 2018) (recounting a previous order in which the court dismissed the plaintiff's complaint "with

leave to ament to plead only retrospective injunctive relief as a former member of the plan"); Kazda v. Aetna Life Ins. Co., No. 19-CV-02512-WHO, 2022 WL 1225032 (N.D. Cal. Apr. 26, 2022) (holding that the plaintiff had standing to pursue an injunction as a form of retrospective relief because "the harm that existed at the time" the plaintiff "filed suit . . . persists today").

### 2. Stating a Claim

To state a claim under § 502(a)(3), Swartzendruber must show an ERISA violation and that the relief sought is "appropriate equitable relief." See Pender v. Bank of Am. Corp., 788 F.3d 354, 363–64 (4th Cir. 2015). Under this provision, "appropriate equitable relief" refers to "those categories of relief that, traditionally speaking . . . were typically available in equity." CIGNA Corp. v. Amara, 563 U.S. 421, 439 (2011); Rose, 2023 WL 5839282, at *7. Further,"[r]elief under § 502(a)(3) is available only if a plaintiff's relief under ERISA's other remedial provisions would otherwise be inadequate." Jordan, 2021 WL 4148460, at *13 (citing Varity Corp., 516 U.S. at 512; Korotynska v. Metro. Life Ins. Co., 474 F.3d 101, 105 (4th Cir. 2006)).

Swartzendruber satisfies all three requirements. First, Swartzendruber has plead facts sufficient to establish an ERISA violation: the Sentara Defendants knowingly misrepresented the location at which services were provided to the United Defendants on claims associated with Swartzendruber's September 10, 2019, and June 21, 2021, visits to facilities associated with the Sentara Defendants. Relying on this misrepresentation, the United Defendants processed Swartzendruber's claims at the higher rates associated with care provided at Sentara RMH, rather than the lower rates under the United Defendants' contract with RMH

16

Medical. This resulted in Swartzendruber paying Sentara higher out-of-pocket costs than proper under his Plan.[4] Despite the Sentara Defendants arguments to the contrary, their lack of fiduciary status does not insulate them from the reach of ERISA § 502(a)(3). See LeBlanc v. Cahill, 153 F.3d 134, 138 (4th Cir. 1998) (permitting claim against non-fiduciaries and non-parties in interest to proceed on a fraudulent misrepresentation claim); see also Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 246–47 (2000) ("But § 502(a)(3) admits of no limit . . . on the universe of possible defendants.").

Second, he seeks injunctive relief, the "quintessential equitable remedy," Rose, 2023 WL 5839282, at *6, to rectify the effects of the Sentara Defendants' misrepresentations to the United Defendants.

Third, ERISA § 502(a)(1) is inadequate to afford Swartzendruber complete relief in this case. This case is unusual, in that both Swartzendruber's medical providers and his insurer allegedly played a role in causing his harm. Therefore, a traditional action under ERISA § 502(a)(1) to recover benefits under the plan would not provide sufficient relief. Full redress of Swartzendruber's injury requires a mechanism to remedy the Sentara defendants alleged misrepresentations. That mechanism is the equitable relief envisioned by ERISA § 502(a)(3).[5]

---

[4] The court notes the interplay between Count Three, which seeks relief under ERISA § 502(a)(3), and Count Five, which seeks relief for fraudulent misrepresentations made in violation of the VCPA. As the court holds below, Count Five is preempted by ERISA in part because Swartzendruber can seek relief for the complained-of injury under ERISA § 502(a)(3).

[5] Swartzendruber's claim against the Sentara defendants most closely resembles a claim for fraudulent misrepresentation. Several courts have held that common law claims are actionable under ERISA § 502(a)(3). See C Evans Consulting LLC v. Sortino Fin., LLC, No. CV GLR-21-2493, 2023 WL 5103725, at *5 (D. Md. Aug. 8, 2023); Jenkins v. Moses H. Cone Mem'l Health Servs. Corp., No. 5:16-CV-00188-FL, 2016 WL 9406697, at *4–7 (E.D.N.C. Dec. 30, 2016).

Because an ERISA § 502(a)(3) claim can only proceed where ERISA § 502(a)(1) is insufficient to provide complete relief, Varity Corp., 516 U.S. at 515, Korotynska, 474 F.3d at 107–08, the two claims can rarely proceed simultaneously. However, Varity Corp. and Korotynska "do not mean that simultaneous claims for relief are always inappropriate." Sloan v. Life Ins. Co. of N. Am., No. CV BPG-18-3055, 2019 WL 6173410, at *4 (D. Md. Nov. 20, 2019). Permitting simultaneous claims here "preserves the true purpose of § 1132(a)(3): to authorize individual equitable relief, not where plan administrators have made a mistake on an individual benefits determination, but where, as in Varity, [516 U.S. at 515,] ERISA's other provisions do not afford adequate relief." Korotynska, 474 F.3d at 108.

### D. Count Four

In Count Four, Swartzendruber brings RICO claims under 18 U.S.C. § 1962(a), which prohibits a person from investing in an enterprise income derived from a pattern of racketeering, and 18 U.S.C. § 1962(c), which prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering. Any person who is "injured in his business or property by reason of a" § 1962 violation may bring suit and recover treble damages, costs, and attorney fees. 18 U.S.C. § 1964(c).

To state a claim under either 18 U.S.C. § 1962(a) or (c), Swartzendruber must first allege "a pattern of racketeering activity," which includes "any number of predicate acts, including mail and wire fraud." Al-Abood ex rel. Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2000). Because Swartzendruber has failed to allege a "pattern" of racketeering activity, he fails to state a claim under RICO.

To establish a pattern of racketeering, Swartzendruber must show at least two predicate acts, which are related, and that "constitute or pose a threat of continued criminal activity." Id. The Fourth Circuit cautions courts to be "cautious about basing a RICO claim on predicate acts of mail and wire fraud because "[i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice."' Id. (quoting Anderson v. Foundation for Advancement, Educ. and Employment of Am. Indians, 155 F.3d 500, 506 (4th Cir. 1998) (internal quotation omitted)). The Fourth Circuit "reserve[s] RICO liability for 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'" Id. (quoting Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989)). Further, because Swartzendruber relies on mail and wire fraud predicates, his claims are held to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). This rule requires that allegations of fraud be pled with particularity "as to the time, place and contents of the false representations, the identity of the person making those representations, and what was obtained by the fraud." Foster v. Wintergreen Real Est. Co., No. 3:08CV00031, 2008 WL 4829674, at *5 (W.D. Va. Nov. 6, 2008) (citing Harrison v. Savannah Westinghouse River Co., 176 F.3d 776, 784 (4th Cir. 1999)), aff'd, 363 F. App'x 269 (4th Cir. 2010), and aff'd, 363 F. App'x 269 (4th Cir. 2010).

Swartzendruber pleads facts sufficient to establish two predicate acts. Specifically, he alleges that the Sentara Defendants intentionally misrepresented to the United Defendants, by way of electronic communication, the location at which services were provided for claims related to Swartzendruber's September 10, 2019, and June 21, 2021, visits to Sentara-affiliated facilities. The United Defendants relied on these misrepresentations and processed

19

the claims pursuant to the contracts with the fraudulently listed location. As a result, Swartzendruber was forced to pay larger out-of-pocket expenses for his care.[6]

However, Swartzendruber fails to show that these acts "constitute or pose a threat of continued criminal activity." Al-Abood ex rel. Al-Abood, 217 F.3d at 238.

> "The continuity aspect, in turn, refers 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'"[ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 182 (4th Cir. 2002)] (quoting H.J. Inc[v. Northwestern Bell Tel. Co., 492 U.S. 229, 241 (1989))]. Predicate acts extending over a few weeks, months, or even one year, and threatening no future criminal conduct do not satisfy the continuity requirement, as Congress was only concerned with long-term criminal conduct. Id. This "inquiry's focus is on whether the related predicate acts indicate 'ongoing criminal activity of sufficient scope and persistence to pose a special threat to social well-being.' " Myers v. Finkle, 758 F. Supp. 1102, 1112 (E.D. Va. 1990) (quoting Int'l Data Bank, [Ltd. v. Zepkin, 812 F.2d 149, 155 (4th Cir. 1987)]. Factors relevant to this inquiry include the number of and variety of predicate acts, the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries. See id. (citing Brandenburg v. Seidel, 859 F.2d 1179, 1185 (4th Cir. 1988)). "Thus, it is clear that predicate acts of racketeering activity must be part of a prolonged criminal endeavor." ePlus Tech., 313 F.3d at 182.

Williams v. Equity Holding Corp., 498 F. Supp. 2d 831, 843 (E.D. Va. 2007).

Swartzendruber fails to plead facts sufficient to meet this continuity test. He cannot plausibly allege—based on his individual claims—that Sentara's conduct poses any risk of repetition in the future, as United is no longer his insurer and the contracts between United and the Sentara Defendants no longer apply. Nor is his allegation of two instances of fraud

---

[6] These details fulfilled the purpose of Rule 9(b): to provide "the defendant with sufficient notice of the basis for the plaintiff's claim, to protect the defendant against frivolous suits, to eliminate fraud actions where all of the facts are learned only after discovery, and to safeguard the defendant's reputation." Chambers v. King Buick GMC, LLC, 43 F. Supp. 3d 575, 586 (D. Md. 2014).

in under two years sufficient to support closed continuity. See Gov't of Dominican Republic v. AES Corp., 466 F. Supp. 2d 680, 690–91 (E.D. Va. 2006) ("[T]ime periods of less than two years [are] insufficient to establish closed-ended continuity.").

Swartzendruber is unable to plead facts related to any additional predicate acts beyond his own two medical claims. While Swartzendruber argues that Sentara routinely engaged in this fraudulent conduct with other potential class members, "the conclusory general assertion that the Defendants engaged in numerous acts of mail and/or wire fraud" related to patients other than Swartzendruber "is insufficient" to meet Rule 9(b)'s pleading requirements. Bailey v. Atl. Auto. Corp., 992 F. Supp. 2d 560, 584 (D. Md. 2014). "In the absence of any specific allegation of fraudulent conduct beyond that directed to" Swartzendruber, the complaint "fails to allege a plausible pattern of racketeering." Id.

### E.  Count Five

Swartzendruber's claim that the Sentara Defendants violated the VCPA fails, as it is preempted by ERISA. "There are two strands of ERISA preemption: (1) 'express' preemption under ERISA § 514(a), 29 U.S.C. § 1144(a); and (2) preemption due to a 'conflict' with ERISA's exclusive remedial scheme set forth in [§ 502(a)], notwithstanding the lack of express preemption." Paulsen v. CNF Inc., 559 F.3d 1061, 1081 (9th Cir. 2009) (citing Cleghorn v. Blue Shield of Cal., 408 F.3d 1222, 1225 (9th Cir. 2005)). Both operate to preempt Count Five.

#### 1.    Express Preemption

Swartzendruber's VCPA claim is expressly preempted. "ERISA's express preemption provision, § 514, states that ERISA supersedes all state laws insofar as they 'relate to' an

ERISA plan. In Shaw v. Delta Air Lines, Inc., the Supreme Court held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." 463 U.S. 85, 96–97 (1983). "The Supreme Court has recognized that an expansive interpretation of the phrase 'relate to' would mean that 'for all practical purposes pre-emption would never run its course.'" Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 189–90 (4th Cir. 2002) (quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995). The Supreme Court thus instructs courts to "go beyond the unhelpful text" and "look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." Travelers, 514 U.S. at 656.

> In light of these ERISA objectives, the Supreme Court has explained that Congress intended to preempt at least three categories of state law under § 514: (1) laws that mandate employee benefit structures or their administration, (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practices, and (3) laws that provide alternative enforcement mechanisms to ERISA's civil enforcement provisions.

Darcangelo, 292 F.3d at 190 (citing Travelers, 514 U.S. at 658–59). "A state claim is an alternative enforcement mechanism for ERISA rights if the state claim could be brought as an enforcement action under § 502." Id. at 191.

Swartzendruber alleges that the Sentara Defendants violated the VCPA by misrepresenting the location at which medical services were provided and, in doing so, falsely represented that consumers owed a higher amount than they actually did. ECF No. 32, at ¶ 178. Swartzendruber claims that he and members of the putative class he seeks to represent suffered losses as a result of these misrepresentations. Id. at ¶ 181.

Swartzendruber's VCPA claim is inextricably bound up in his ERISA claims. His status as a Plan beneficiary is the source of any entitlement he has to be charged any rate under either the United-RMH Medical contract or the United-Sentara RMH contract. Therefore, his VCPA claim is "not capable of resolution without an interpretation of the Plan, which is a contract governed by ERISA." C Evans Consulting LLC v. Sortino Fin., LLC, No. CV GLR-21-2493, 2023 WL 5103725, at *5 (D. Md. Aug. 8, 2023); see also Quality Air Servs., LLC v. DiPippo, No. JFM-12-3338, 2013 WL 693052, at *1 (D. Md. Feb. 25, 2013) ("[R]esolution of this dispute requires interpretation of the plan's provisions, at least for the purpose of determining the amount of the loss suffered by the plan.").

Swartzendruber's situation presents the inverse of the facts described in Lone Star, 579 F.3d at 532, discussed above. There, the contract dispute between a provider and insurer did not fall within ERISA because the dispute only incidentally involved an ERISA plan. Here, by contrast, whether Swartzendruber or the putative class have suffered any losses depends first and foremost on their ERISA-regulated Plan, and then on the contracts between the United Defendants and each Sentara Defendant. The VCPA, as employed here, is an alternative enforcement mechanism to ERISA and therefore preempted.

To the court's knowledge, only one other case considers whether ERISA preempts state law claims by a patient against a medical provider: Jenkins v. Moses H. Cone Mem'l Health Servs. Corp., No. 5:16-CV-00188-FL, 2016 WL 9406697 (E.D.N.C. Dec. 30, 2016). The result here comports with Jenkins, wherein the court dismissed various state law claims that "depend[ed] on plaintiff's payment obligation, which term is derived from the benefits

plan." Id. at *7. Therefore, these claims were "related to" the Plan and "thus expressly preempted." Id.

## 2. Complete Preemption

Even if Swartzendruber's VCPA claim were not an alternative enforcement mechanism for ERISA—and therefore "related to" his ERISA Plan—it would still be subject to complete preemption.

For complete preemption:

> (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must "fall[ ] within the scope of an ERISA provision that [it] can enforce via § 502(a)"; and (3) the claim must not be capable of resolution "without an interpretation of the contract governed by federal law," i.e., an ERISA-governed employee benefit plan.

Sonoco Prod. Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 372 (4th Cir. 2003) (alterations in original). The first prong is met because Swartzendruber, as a plan beneficiary, has standing under § 502(a) to pursue his claim. The second and third prongs are met because, as discussed above, Swartzendruber's core complaint is that he was charged more than his ERISA-governed plan allowed because of the Sentara Defendants' misrepresentations, which can be remedied through § 502(a). See, e.g., C Evans Consulting LLC, 2023 WL 5103725, at *5 (noting that plaintiff could bring claims equivalent to negligence and unjust enrichment through ERISA § 502(a)(3)). Therefore, the VCPA claim is also completely preempted. See also Jenkins, 2016 WL 9406697, at *4–5 (holding that certain state law claims made by patient against medical provider were completely preempted based on the Sonoco test).

## IV. Conclusion

For the aforementioned reasons, the Sentara Defendants Motion to Dismiss, ECF No. 35, is **GRANTED** in part as to Counts Four and Five and **DENIED** in part as to Count Three; and the United Defendants' Motion to Dismiss, ECF No. 37, is **GRANTED** in part as to Count Two, and **DENIED** in part as to Counts One and Three.

It is **SO ORDERED**.

Entered: September 26, 2023

Michael F. Urbanski
Chief U.S. District Judge
2023.09.26 13:09:50
-04'00'

Michael F. Urbanski
Chief United States District Judge