**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | |
|---|---|
| **MICHAEL J. SWARTZENDRUBER,** **for himself and on behalf of others** **similarly situated,** ) ) ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No: 5:22-cv-055-MFU** |
| **SENTARA RMH MEDICAL** ) **CENTER, RMH MEDICAL GROUP,** ) **LLC, UNITED HEALTHCARE** ) **INSURANCE COMPANY, and** ) **UNITED HEALTHCARE OF THE** ) **MID-ATLANTIC, INC.,** ) | **REDACTED AND PUBLICLY** **FILED PURSUANT TO** **5/30/2025 ORDER (ECF NO. 159)** |
| ) | |
| **Defendants.** ) | |

**JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF**
**DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Defendants UnitedHealthcare Insurance Company and United HealthCare of the Mid-Atlantic, Inc. (collectively, "United") and Defendants Sentara RMH Medical Center and RMH Medical Group, LLC (collectively, "Sentara") submit the following Joint Statement of Undisputed Material Facts in support of their respective Motions for Summary Judgment on Plaintiff Michael J. Swartzendruber's Second Amended Complaint ("SAC"), ECF No. 112.

**A.**     **Plaintiff's Plan Documents**

1.     Plaintiff is a former United member insured through his then-employer, Rosetta Stone. United Defs.' Answer to SAC, ECF No. 118 at Pg. ID 1795, ¶¶ 27–28.

2.     Plaintiff's ERISA claims in this action relate to benefits made available under the policy Rosetta Stone offered, the UnitedHealthcare Choice Plus Health Savings Account (HSA)

Plans AGQA, Group Number 755913 (the "Plan"). Second Am. Compl. ("SAC"), ECF No. 112;

Ex. A, 2019 Group Policy § 6.1; Ex. B, 2021 Group Policy § 6.1.

3.      The Plan is established by the applicable Group Policies, which in turn identify "the

Certificate(s) of Coverage, the Schedule(s) of Benefits, the application of the Enrolling Group, and

any Amendments, Notices of Change, and Riders" as the governing documents that govern the

Plan (collectively, the "Plan Documents"). Ex. A, 2019 Group Policy § 6.1; Ex. B, 2021 Group

Policy § 6.1; 2019 Certificate of Coverage ("CoC"), ECF No. 18-1 at Pg. ID 205; 2021 CoC, ECF

No. 18-2 at Pg. ID 386.

4.      The Plan identifies Rosetta Stone, Ltd as the Plan Administrator, Plan Sponsor, and

Named Fiduciary. The Plan explains that "Benefits are provided under a group insurance contract

entered into between your Plan Sponsor and UnitedHealthcare. Claims for benefits are sent to

UnitedHealthcare. Your employer and UnitedHealthcare share responsibility for administering the

plan." 2019 CoC, ECF No. 18-1 at Pg. ID 260; 2021 CoC, ECF No. 18-2 at Pg. ID 453.

5.      The Plan identifies United as a "Claims Fiduciary" and, in this role, grants United:

> [D]iscretionary authority to interpret the terms of the Plan and to
> determine eligibility for benefits in accordance with the terms of the
> Plan. Any interpretation or determination made according to such
> discretionary authority shall be given deference and be legally
> binding on all parties and subject to review by a legal authority only
> to the extent the decision was arbitrary and capricious.

2019 CoC, ECF No. 18-1 at Pg. ID 260–61; 2021 CoC, ECF No. 18-2 at Pg. ID 453–54.

6.      The Plan does not identify the Sentara Defendants as fiduciaries or otherwise

reference the Sentara Defendants. 2019 CoC, ECF No. 18-1; 2021 CoC, ECF No. 18-2; Ex. WW,

Micheal J. Swartzendruber Dep. Tr. ("Pl. Dep. Tr.") 74:17–75:8.

7.     Any changes to the Plan must be in writing and signed by an executive officer of United. Ex. A, 2019 Group Policy § 6.4; Ex. B, 2021 Group Policy § 6.4; 2019 CoC, ECF No. 18-1 at Pg. ID 194, 197; 2021 CoC, ECF No. 18-2 at Pg. ID 375, 378.

**B.     Framework for Benefits and United's Payments to Network Providers Under the Plan**

8.     The Plan defines "Benefits" as "your right to payment for Covered Health Care Services that are available under the Policy." 2019 CoC, ECF No. 18-1 at Pg. ID 197; 2021 CoC, ECF No. 18-2 at Pg. ID 378.

9.     "Covered Health Care Service(s)" must be Medically Necessary and described in the "*Certificate* under *Section 1: Covered Health Care Services* and in the *Schedule of Benefits*." 2019 CoC, ECF No. 18-1 at Pg. ID 198; 2021 CoC, ECF No. 18-2 at Pg. ID 379.

10.     The Plan section describing Covered Health Care Services for which Benefits are available specifically addresses outpatient laboratory services:

> Services for Sickness and Injury-related diagnostic purposes, received on an outpatient basis at a Hospital or Alternate Facility or in a Physician's office include:
>
> • Lab and radiology/X-ray. . . .
>
> Benefits include:
>
> • The facility charge and the charge for supplies and equipment.
>
> • Physician services for radiologists, anesthesiologists and pathologists. . . . .

2019 CoC, ECF No. 18-1 at Pg. ID 143; 2021 CoC, ECF No. 18-2 at Pg. ID 324.

11.     A Member can choose to receive Network Benefits or Out of Network Benefits. 2019 CoC, ECF No. 18-1 at Pg. ID 93; 2021 CoC, ECF No. 18-2 at Pg. ID 272. The Plan explains that "Network Benefits apply to Covered Health Care Services that are provided by a Network Physician or other Network provider." 2019 CoC, ECF No. 18-1 at Pg. ID 93; *see* 2021 CoC, ECF No. 18-2 at Pg. ID 272.

12.     United "arrange[s] for health care providers to participate in a Network" and United

has separate agreements that govern its relationship with these providers. 2019 CoC, ECF No. 18-

1 at Pg. ID 191; 2021 CoC, ECF No. 18-2 at Pg. ID 400; *see also* 2019 CoC, ECF No. 18-1 at Pg.

ID 123–24; 2021 CoC, ECF No. 18-2 at Pg. ID 304–05.

13.     "Network" refers to "a provider that has a participation agreement in effect" with

United. The Plan notes that,

> A provider may enter into an agreement to provide only certain
> Covered Health Care Services, but not all Covered Health Care
> Services, or to be a Network provider for only some of our products.
> In this case, the provider will be a Network provider for the Covered
> Health Care Services and products included in the participation
> agreement and an out-of-Network provider for other Covered Health
> Care Services and products. The participation status of providers
> will change from time to time.

2019 CoC, ECF No. 18-1 at Pg. ID 203–04; 2021 CoC, ECF No. 18-2 at Pg. ID 384-85.

14.     The Plan provides the following details about United's "Provider Network":

> We arrange for health care providers to take part in a Network.
> Network providers are independent practitioners. They are not our
> employees. It is your responsibility to choose your provider. . . .

> Before obtaining services you should always verify the Network
> status of a provider. . . . It is possible that you might not be able to
> obtain services from a particular Network provider. The network of
> providers is subject to change. . . .

> Do not assume that a Network provider's agreement includes all
> Covered Health Care Services. Some Network providers contract
> with us to provide only certain Covered Health Care Services, but
> not all Covered Health Care Services.

2019 CoC, ECF No. 18-1 at Pg. ID 123–24; 2021 CoC, ECF No. 18-2 at Pg. ID 304–05. *See also*

2019 CoC, ECF No. 18-1 at Pg. ID 191; 2021 CoC, ECF No. 18-2 at Pg. ID 400.

15.     United is "not responsible for any act or omission of any provider." 2019 CoC, ECF

No. 18-1 at Pg. ID 191; 2021 CoC, ECF No. 18-2 at Pg. ID 400.

16.    "[T]he Network provider is solely responsible for the services provided." Ex. A,

2019 Group Policy § 6.5; Ex. B, 2021 Group Policy § 6.5. Additionally, "[i]t is the responsibility

of Network Physicians and facilities to file for payment from [United]." 2019 CoC, ECF No. 18-

1 at Pg. ID 131; 2021 CoC, ECF No. 18-2 at Pg. ID 312.

17.    The Plan describes the responsibilities of both United and the Member. United's

Responsibilities include how United will "Determine Benefits":

> We make administrative decisions regarding whether the Policy will
> pay for any portion of the cost of a health care service you intend to
> receive or have received. Our decisions are for payment purposes
> only. We do not make decisions about the kind of care you should
> or should not receive. You and your providers must make those
> treatment decisions.
>
> We have the final authority to do the following:
>
> • Interpret Benefits and the other terms, limitations and exclusions
>   set out in this Certificate, the Schedule of Benefits and any
>   Riders and/or Amendments.
>
> • Make factual determinations relating to Benefits.

2019 CoC, ECF No. 18-1 at Pg. ID 131; 2021 CoC, ECF No. 18-2 at Pg. ID 312.

18.    Another United Responsibility includes "Pay for Our Portion of the Cost of

Covered Health Care Services:"

> We pay Benefits for Covered Health Care Services as described in
> Section 1: Covered Health Care Services [of the Certificates] and in
> the Schedule of Benefits, unless the service[s] is excluded . . . . This
> means we only pay our portion of the cost of Covered Health Care
> Services. It also means that not all of the health care services you
> receive may be paid for (in full or in part) by the Policy.

2019 CoC, ECF No. 18-1 at Pg. ID 131; 2021 CoC, ECF No. 18-2 at Pg. ID 312.

19.    Another United Responsibility includes "Review and Determine Benefits in

Accordance with our Reimbursement Policies:"

> We develop our reimbursement policy guidelines, as we determine,
> in accordance with one or more of the following methodologies:

- As shown in the most recent edition of the *Current Procedural Terminology (CPT)*, a publication of the *American Medical Association*, and/or the *Centers for Medicare and Medicaid Services (CMS)*.

- As reported by generally recognized professionals or publications.

- As used for Medicare.

- As determined by medical staff and outside medical consultants pursuant to other appropriate sources or determinations that we accept.

. . .

Following evaluation and validation of certain provider billings (e.g., error, abuse and fraud reviews), our reimbursement policies are applied to provider billings.

2019 CoC, ECF No. 18-1 at Pg. ID 131–32; 2021 CoC, ECF No. 18-2 at Pg. ID 312–13.

20.    The Plan Schedule of Benefits defines "Allowed Amounts":

the amount we determine that we will pay for Benefits. For Network Benefits for Covered Health Care Services provided by a Network provider, except for your cost sharing obligations, you are not responsible for any difference between Allowed Amounts and the amount the provider bills. . . . Allowed Amounts are determined solely in accordance with our reimbursement policy guidelines, as described in the *Certificate*.

**For Network Benefits**, Allowed Amounts are based on the following:

- When Covered Health Care Services are received from a Network provider, Allowed Amounts are our contracted fee(s) with that provider.

2019 CoC, ECF No. 18-1 at Pg. ID 122; 2021 CoC, ECF No. 18-2 at Pg. ID 302. Plaintiff

acknowledges that Allowed Amounts are what United—not Plaintiff—will pay for Benefits. Ex.

WW, Pl. Dep. Tr. at 155:2–156:9.

21.    The Plan also describes Responsibilities of a Member, including "Pay Your Share":

You must meet any applicable deductible and pay a Co-payment and/or Co-insurance for most Covered Health Care Services. These payments are due at the time of service or when billed by the Physician, provider or facility. Any applicable deductible, Co-

> payment and Co-insurance amounts are listed in the Schedule of
> Benefits. . . . Amounts which you are required to pay, as shown in
> the Schedule of Benefits, are based on Allowed Amounts.

2019 CoC, ECF No. 18-1 at Pg. ID 129–30; 2021 CoC, ECF No. 18-2 at Pg. ID 310–11.

22.     Under the Plan, a Member must pay an "Annual Deductible" which is "calculated on a calendar year basis" and defined as "[t]he amount you pay for Covered Health Care Services per year before you are eligible to receive Benefits." The Plan notes that "[t]he amount that is applied to the Annual Deductible is calculated on the basis of the Allowed Amount". 2019 CoC, ECF No. 18-1 at Pg. ID 95; 2021 CoC, ECF No. 18-2 at Pg. ID 274.

23.     The 2019 and 2021 Plan Schedules of Benefits provide that outpatient lab services are covered at 80% of eligible expenses after a Member meets the Annual Deductible. 2019 CoC, ECF No. 18-1 at Pg. ID 106; 2021 CoC, ECF No. 18-2 at Pg. ID 286–87.

24.     A Member must also pay "Co-insurance" defined as "the amount you pay (calculated as a percentage of the Allowed Amount) each time you receive certain Covered Health Care Services." 2019 CoC, ECF No. 18-1 at Pg. ID 96; 2021 CoC, ECF No. 18-2 at Pg. ID 275.

25.     Plaintiff's out-of-pocket costs were dependent upon his "Annual Deductible." Ex. WW, Pl. Dep. Tr. at 62:8–19. The Sentara Defendants had no information as to Plaintiff's Annual Deductible and could not have advised Plaintiff as to that calculation. *Id.*; Ex, YY, Declaration of Ian R. Noga ("Noga Decl.") ¶ 7.

C.      **United's Contract with Sentara RMH Medical Center**

26.     Defendant Sentara RMH Medical Center is a Virginia nonstock corporation. Sentara Defs.' Answer to SAC, ECF No. 119 at Pg. ID #1825, ¶ 8. Sentara RMH Medical Center operates a hospital in Harrisonburg, Virginia, including the hospital's main campus and several off-campus hospital departments. Ex. CCC, Sentara RMH Medical Center's Second Suppl.

Answers to Pl.'s First Set of Interrogs. Nos. 3–4 (Jan. 8, 2025); Ex. PP, Sentara RMH Medical Center DNV Certification.

27.    East Market Health Center and South Main Health Center are accredited off-campus departments of Sentara RMH Medical Center by Sentara RMH Medical Center's accrediting entity, Det Norske Veritas ("DNV"). Ex. CCC, Sentara RMH Medical Center's Second Suppl. Answers to Pl.'s First Set of Interrogs. at 6–8 (Jan. 8, 2025); Ex. PP, Sentara RMH Medical Center DNV Certification. East Market Health Center has been an off-campus department of Sentara RMH Medical Center since at least 2004. Ex. QQ, Sentara RMH Medical Center's PECOS Enrollment Application. South Main Health Center has been an off-campus department of Sentara RMH Medical Center since at least 2014. *Id.*; Ex. ZZ, Kristina Kahan Expert Report ("Kahan Report") ¶¶ 23–24.

28.    United and several Sentara facilities entered into a Facility Participation Agreement ("FPA") effective February 1, 2009. Neither Plaintiff's former employer, Rosetta Stone, nor Plaintiff are a party to the FPA. Ex. CC, Facility Participation Agreement ("FPA") at 1; Ex. EEE, Pl.'s Resp. to Sentara RMH Medical Center's RFA No. 6 (Sept. 18, 2024).

29.    The August 1, 2011 Amendment to the FPA added Rockingham Memorial Hospital as a party to the FPA. Ex. DD, FPA Amend. (Aug. 1, 2011);. In 2013, Rockingham Memorial Hospital changed its name to Sentara RMH Medical Center. Sentara RMH Medical Center Articles of Amendment, Commonwealth of Virginia – State Corporation Commission, ECF No. 36-2 at Pg. ID #570.

30.    The FPA relates to facility services, including outpatient services provided by Sentara RMH Medical Center and other Sentara entities that are parties to the FPA. Ex. CC, FPA § 3.1.

31.    The FPA applies to services provided by Sentara RMH Medical Center at "service locations set forth in Appendix 1." Ex. CC, FPA § 3.1.

32.    Section 4.5 of the FPA, "Employees and Subcontractors," provides:

> Facility will assure that its employees, affiliates and any individuals or entities subcontracted by Facility to render services in connection with this Agreement adhere to the requirements of this Agreement. The use of employees, affiliates or subcontractors to render services in connection with this Agreement will not limit Facility's obligations and accountability under this Agreement with regard to such services. Facility affiliates are those entities that control, are controlled by or are under common control with Facility.

Ex. CC, FPA § 4.5.

33.    Appendix 1 was replaced under a subsequent amendment to the FPA effective September 1, 2018. Ex. EE, FPA Amend. (Sept. 1, 2018). The "Institutional Providers (Entity List)" set forth in the updated Appendix 1 includes Sentara RMH Medical Center (TIN 54-0506331), 2010 Health Campus Drive, Harrisonburg. Ex. EE, FPA Amend., App. 1 (dated June 4, 2018).

34.    Sentara RMH Medical Center "*must* submit claims for Covered Services in a manner and format prescribed by United, . . . using current UB-04 forms or successor forms for . . . institutional claim formats." Ex. CC, FPA § 6.1 (emphasis added).

35.    The UB-04 form, commonly known as an institutional or facility claim, is used for medical services provided by facilities, such as hospitals, and other institutional providers. Ex. FFF, United's Supp. Answers to Pl.'s First Set of Interrogs. Nos. 2–3 (Aug. 7, 2024).[1]

---

[1] *See also* CMS, *Medicare Claims Processing Manual,* Ch. 25 – Completing and Processing the Form CMS-1450 Data Set § 70.1 (Rev. 12423, Dec. 20, 2023), https://www.cms. gov/regulations-and-guidance/guidance/manuals/downloads/clm104c25.pdf; CMS, *Medicare Billing: CMS-1450 & 837I*, Medical Learning Network (November 2024), https://www.cms.gov/files/document/837i-form-cms-1450-mln006926.pdf.

36.    Section 6.10 of the FPA, "Correction of Overpayments or Underpayments of Claims," provides that "[i]n the event that either Party believes that a claim has not been paid correctly, or funds were beyond or outside of what is provided for under this Agreement, either party may seek correction of the payment by giving the other party notice." Ex. CC, FPA § 6.10.

37.    Section 9.6 of the FPA, "No Third-Party Beneficiaries," provides that "United and Facility are the only entities with rights and remedies under the Agreement". Ex. CC, FPA § 9.6.

**D.    United's Contract with RMH Medical Group**

38.    Defendant RMH Medical Group, LLC is a Virginia limited liability company registered to do business as Sentara RMH Medical Group. Sentara Defs.' Answer to SAC, ECF No. 119 at Pg. ID #1825, ¶ 14.

39.    United and Sentara Medical Group entered into a Medical Group Participation Agreement ("MGPA") effective February 1, 2012. Ex. FF, MGPA. Neither Plaintiff's former employer, Rosetta Stone, nor Plaintiff are a party to the MGPA. *Id.*; Ex. EEE, Pl.'s Resp. to Sentara RMH Medical Center's RFA No. 6 (Sept. 18, 2024).

40.    RMH Medical Group, LLC d/b/a Sentara RMH Medical Group was substituted as a party to the MGPA under an amendment effective January 1, 2016. Ex. FF, MGPA, Jan. 1, 2016 Amendment to the MGPA.

41.    The MGPA relates to professional services provided by Medical Group Physicians or Medical Group Non-physician Providers. Ex. FF, MGPA §§ 1.5–1.7, 3.1 .

42.    The MGPA defines "Medical Group Professional" as "a Medical Group Physician or a Medical Group Non-physician Provider." Ex. FF, MGPA § 1.7.

43.    A Medical Group Non-physician Provider is defined, in relevant part, as:

> a surgical assistant, physician assistant, nurse practitioner, physical therapist, occupational therapist, speech therapist, mental health

> provider, or licensed social worker, who is duly authorized under the
> laws of the jurisdiction in which Covered Services are provided, and
> who renders Covered Services as an employee or subcontractor of
> Medical Group.

Ex. FF, MGPA § 1.6.

44.    RMH Medical Group is a legal entity, not a physical location. The MGPA does not apply to all services provided at outpatient centers, as Plaintiff mistakenly believes. Ex. WW, Pl. Dep. Tr. at 173:19–174:3 ("[T]he MGPA seems to govern the outpatient facilities, and the fact that I had a service, the venipuncture, done at the outpatient facility, so I would think that it should be billed under that, not under the Facility Participation Agreement."); SAC, ECF No. 112 at Pg. ID #1732 ¶¶ 46–48.

45.    Medical groups may practice at off-campus or outpatient departments of facilities, but United does not contract with a location in a medical group agreement. Ex. UU, Deposition Transcript of Derek Kline ("Kline Dep. Tr.") at 11:14–12:4. More than one legal entity can provide services at a given location, and one address may be associated with multiple providers and multiple United provider agreements. Ex. VV, Declaration of Derek Kline ("Kline Decl.") ¶ 5.

46.    Claims "for Covered Services" provided by RMH Medical Group must be submitted to United "using current CMS 1500 form or its successor." Ex. FF, MGPA § 7.1.

47.    The CMS-1500 form is used for professional services. CMS, *Medicare Claims Processing Manual*, Ch. 26 – Completing and Processing Form CMS-1500 Data Set § 10 (Rev. 12779, Aug. 9, 2024), https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/clm104c26pdf.pdf. The CMS-1500 form is commonly known as a professional claim. CMS, *Electronic Billing,* Professional Paper Claim Form (CMS-1500), https://www.cms.gov/medicare/coding-billing/electronic-billing/professional-paper-claim-form.

48.     Facility and professional claims have different required information fields—the forms are not interchangeable. Ex. FFF, United's Supp. Answers to Pl.'s First Set of Interrogs. Nos. 2–3 (Aug. 7, 2024).[2]

49.     The CMS-1500 form requires greater detail about the rendering provider and service location. For example, the CMS-1500 form requires laboratory testing claims to include the rendering laboratory's Clinical Laboratory Improvement Amendment license number.[3]

50.     The MGPA uses Fee Schedule 75222, a standard fee schedule covering numerous professionals at numerous locations. Ex. GG, MGPA Payment Appendix. As a result, Fee Schedule 75222 includes laboratory and other services that are not provided by all RMH Group Medical Group professionals at all locations. Ex. VV, Kline Decl. ¶ 16.

51.     Section 7.10 of the MGPA, "Correction of Overpayments or Underpayments of Claims," provides that "[i]n the event that either Party believes that a claim has not been paid correctly, or that funds were beyond or outside of what is provided for under this Agreement, either party may seek correction of the payment by giving the other party notice." Ex. FF, MGPA § 7.10.

52.     Section 10.6 of the MGPA, "No Third-Party Beneficiaries," provides that "United and [RMH] Medical Group are the only entities with rights and remedies under the Agreement." Ex. FF, MGPA § 10.6.

### E.    United Claims Processing

---

[2] CMS, *Medicare Claims Processing Manual,* Ch. 25 – Completing and Processing the Form CMS-1450 Data Set § 70.1 (Rev. 12423, Dec. 20, 2023), https://www.cms. gov/regulations-and-guidance/guidance/manuals/downloads/clm104c25.pdf; CMS, *Medicare Claims Processing Manual*, Ch. 26 – Completing and Processing Form CMS-1500 Data Set § 10 (Rev. 12779, Aug. 9, 2024), https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/clm104c26pdf.pdf; NUBC, *UB-04,* CMS-1450 (Last Accessed Jan. 30, 2025)*,* https://www.cdc.gov/wtc/pdfs/policies/ub-40-P.pdf; NUCC, *Health Insurance Claim Form,* Form 1500 (Feb. 2012) , https://www.cms.gov/medicare/cms-forms/cms-forms/downloads/cms1500.pdf.

[3] Nat'l Unif. Claim Comm., *1500 Health Insurance Claim Form Reference Instruction Manual for Form Version 02/12*, 33 (July 2018), https://www.nucc.org/images/stories/PDF/1500_claim_form_instruction_manual_2012_02-v6.pdf.

53.     When United receives claims for payment, United screens those claims to determine if the submitting provider participates in United's network by checking the provider's unique identifiers, such as the Tax ID number, against records that United maintains in the ordinary course of business. Ex. FFF, United's Supp. Answers to Pl.'s First Set of Interrogs. Nos. 2–4 (Aug. 7, 2024); Ex. G, Letter from United to Pl. (Nov. 29, 2019); Ex. L, Letter from United to Pl. (Mar. 22, 2022).

54.     The address a provider lists on a claim is not determinative of the provider's network status or how United processes the claim, because more than one legal entity can provide services at a given location. Ex. VV, Kline Decl. ¶ 5. Thus, one address may be associated with multiple providers and multiple United provider agreements. *Id.*

55.     Neither the identity of the provider who ordered the laboratory testing services nor the employer of the individual who performed the blood draw controls the type of bill or claim form that must be used by a provider. Ex. ZZ, Kahan Report ¶¶ 18, 43.

56.     Both Sentara RMH Medical Center and RMH Medical Group provide services at the East Market Health Center and South Main Health Center locations. "RMH Medical Group provides professional services and Sentara RMH Medical Center provides services at a lab draw site." Ex. YY, Noga Decl. ¶ 5.

57.     At the time Plaintiff received the service at issue at the East Market Health Center in September 2019, a lease was in place between third-party Spotswood Valley Center Owner, LLC and Rockingham Memorial Hospital, dated July 30, 2012 ("East Market Health Center Lease"). Ex. RR, East Market Health Center Lease. The rented premises under the East Market Health Center Lease include 18,292 square feet located at 1790-64B East Market Street, Harrisonburg, Virginia 22801. *Id.* § 1. Permitted uses for the space included "an urgent care center,

laboratories, offices, or any other medical or office use offered by Tenant." *Id.* Per the terms of the East Market Health Center Lease, the premises were occupied and managed by the lessee, Rockingham Memorial Hospital n/k/a Sentara RMH Medical Center. Ex. BBB, RMH Medical Group's Second Supp. Answers to Pl.'s First Set of Interog. No. 11 (Jan. 31, 2025).

58.    At the time Plaintiff received the service at issue at the South Main Health Center, there were multiple leases for 1661 South Main Street, Harrisonburg, Virginia 22801, each dated January 1, 2020—Sentara Rockingham Memorial Hospital is the tenant in one ("South Main Health Center Medical Center Lease") and RMH Medical Group ("South Main Health Center Medical Group Lease") is the tenant in the other. Ex. SS, South Main Health Center Medical Center Lease; Ex. TT, South Main Health Center Medical Group Lease . The rented premises under the South Main Health Center Medical Center Lease include "1,357 rentable square feet in the Building on the first (1st) floor . . . Lab Services has approximately 692 rentable square feet and Imaging/Radiology Services has approximately 665 rentable square feet." Ex., SS, South Main Health Center Medical Center Lease § A(v). The rented premises under the South Main Health Center Medical Group Lease include "14,491 rentable square feet in the Building on the first (1st) floor." Ex. TT, South Main Medical Group Lease § A(v). The purpose of the South Main Health Center Medical Center Lease is to rent space "for the conduct of Tenant's laboratory and medical imaging services and ancillary uses," while the purpose of the South Main Health Center Medical Group Lease is to rent space for "conduct of Tenant's practice of family medicine and related services." Ex., SS, South Main Health Center Medical Center Lease § A(vii); Ex. TT, South Main Medical Group Lease § A(vii). Per the terms of the South Main Health Center Medical Center Lease, the premises were occupied and managed by the lessee, Rockingham Memorial Hospital

n/k/a Sentara RMH Medical Center. Ex. BBB, RMH Medical Group's Second Supp. Answers to Pl.'s First Set of Interog. No. 11 (Jan. 31, 2025).

59.     Sentara RMH Medical Center and RMH Medical Group are legal entities, not physical locations, as Plaintiff mistakenly believes. SAC, ECF No. 112 at Pg. ID #1732 ¶¶ 46–48; Ex. WW, Pl. Dep. Tr. at 173:19–174:3 ("[T]he MGPA seems to govern the outpatient facilities, and the fact that I had a service, the venipuncture, done at the outpatient facility, so I would think that it should be billed under that, not under the Facility Participation Agreement.").

60.     The CMS-1500 form requires claims for laboratory testing to include the rendering laboratory's Clinical Laboratory Improvement Amendment ("CLIA") certificate number in Box 23. Under the MGPA, RMH "Medical Group will only be reimbursed for services that [it] is certified through the [CLIA] to perform." Ex. FF, MGPA § 5.13; Ex. FFF, United's Supp. Answers to Pl.'s First Set of Interrogs. Nos. 3–4 (Aug. 7, 2024).

61.     Once the provider's network participation status is determined, the claim is processed pursuant to United's Administrative Guide and any applicable United medical policies or United reimbursement policies. Ex. CC, FPA §§ 1.5, 4.4; Ex. FF, MGPA §§ 1.8, 5.4. United makes these policies and procedures publicly available on its website. Ex. FFF, United's Supp. Answers to Pl.'s First Set of Interrogs. No. 4 (Aug. 7, 2024).

62.     If a claim conforms with United's policies and procedures, the claim is reimbursed based on the billing provider's network status. 2019 CoC, ECF No. 18-1 at Pg. ID 131; 2021 CoC, ECF No. 18-2 at Pg. ID 312. Network provider claims are paid the Allowed Amount under the member's plan, which is based on the contracted rates between United and that provider. 2019 CoC, ECF No. 18-1 at Pg. ID 122; 2021 CoC, ECF No. 18-2 at Pg. ID 302. A member's cost share obligations, if any, are determined according to that member's plan's benefits. Ex. FFF, United's

Supp. Answers to Pl.'s First Set of Interrogs. Nos. 3–4 (Aug. 7, 2024); 2019 CoC, ECF No. 18-1 at Pg. ID 129–30; 2021 CoC, ECF No. 18-2 at Pg. ID 310–11.

63.     United processes a claim according to the information submitted by the provider. Ex. UU, Kline Dep. Tr. at 28:19–23. United cannot unilaterally adjust its claims processing systems to reprocess claims as if they had been billed with different information or on a completely different claim form by a different provider type. Ex. FFF, United's Supp. Answers to Pl.'s First Set of Interrogs. Nos. 3–4 (Aug. 7, 2024). United can only process claims as they are received. *Id.*

64.     Sentara RMH Medical Center appropriately billed Plaintiff's claims as facility services. Ex. UU, Kline Dep. Tr. at 28:13–23.

**F.     United Reimbursement Policies**

65.     Section 5.13 of the MGPA states that the Medical Group "will only be reimbursed for services that Medical Group is certified through the Clinical Laboratory Improvement Amendments (CLIA) to perform, and Medical Group must not bill Customers for any laboratory services for which Medical Group lacks CLIA certification." Ex. FF, MGPA § 5.13 .

66.     This provision is echoed in United's Administrative Manual, which contains the bulk of United's protocols and reimbursement policies. Ex. HH, 2019 UnitedHealthcare Care Provider Administrative Guide; Ex, II, 2021 UnitedHealthcare Care Provider Administrative Guide .

67.     Both the FPA and MGPA obligate Sentara to adhere to these policies. Ex. CC, FPA § 4.4; Ex. FF, MGPA § 5.4.

68.     The Plan documents also incorporate these policies: "Following evaluation and validation of certain provider billings (e.g., error, abuse and fraud reviews), [United's]

reimbursement policies are applied to provider billings." 2019 CoC, ECF No. 18-1 at Pg. ID 132;

2021 CoC, ECF No. 18-2 at Pg. ID 313.

69.     The 2019 and 2021 Manuals advise providers that United will "only reimburse for

laboratory services that you are certified to perform through the federal CLIA. You must not bill

our members for *any* laboratory services if you don't have the applicable CLIA certification." Ex.

HH, 2019 UnitedHealthcare Care Provider Administrative Guide at 60 (emphasis added); Ex. II,

2021 UnitedHealthcare Care Provider Administrative Guide at 100.

70.     The Manuals note that for all "laboratory claims and/or encounters," the services

must be ordered by "[a] licensed care provider" and the claim forms must include the referring

care provider's name[,] NPI number, . . . the CLIA number for the servicing care provider," and

all "other elements of a complete claim." Ex. HH, 2019 UnitedHealthcare Care Provider

Administrative Guide at 60; Ex. II, 2021 UnitedHealthcare Care Provider Administrative Guide at

100.

71.     Both the East Market and South Main Health Centers possess CLIA certificates for

specific purposes. Ex, NN, East Market CLIA Certificate; Ex. OO, South Main CLIA Certificate.

As Plaintiff acknowledges, the laboratory tests Plaintiff received could not be performed at either

of these locations. SAC, ECF No. 112 at Pg. ID #1744, ¶ 135; Ex. DDD, Sentara RMH Medical

Center's Answers to Pl.'s Second Set of Interrogs. Nos. 11–12 (Aug. 14, 2024); Ex. AAA, RMH

Medical Group's Supp. Answers to Pl.'s First Set of Interrog. Nos. 9–10 (Jan. 8, 2024).

**G.**    **Sentara Consent Waiver & Financial Agreement**

72.     Before Plaintiff received the services at issue, he signed a consent form consenting

to treatment by both Sentara RMH Medical Center and RMH Medical Group. Ex. X, Sept. 2019

Sentara Consent Waiver & Financial Agreement; Ex. YY, Noga Decl. ¶ 6. If a hard copy of the

17

Consent Waiver and Financial Agreement was not provided, it would have been provided upon request. Ex. YY, Noga Decl. ¶ 6.

73.     Pursuant to the "Financial Agreement" section, Plaintiff "agree[d] to pay all charges made by the Hospital based upon Sentara's RMH Medical Center's current charge master and Sentara RMH Medical Group's current charge master, or other medical providers at their current rate for services rendered." Ex. X, Sept. 2019 Sentara Consent Waiver & Financial Agreement .

74.     Plaintiff was also notified that "professional fees for . . . Sentara RMH Medical Group and other physicians' services are billed separately from Sentara RMH Medical Center's services" and that "[s]ome insurance companies require that lab work be billed directly by the laboratory performing the testing." Ex. X, Sept. 2019 Sentara Consent Waiver & Financial Agreement.

75.     Thus, Sentara provided Plaintiff notice that different providers could bill for the services he received, and Plaintiff specifically agreed to pay for "charges made by" Sentara RMH Medical Center or RMH Medical Group. Ex. X, Sept. 2019 Sentara Consent Waiver & Financial Agreement. Plaintiff did not review the FPA or the MGPA prior to receiving the services at issue. Ex. WW, Pl. Dep. Tr. at 68:8–69:3, 72:11–15.

**H.      United's Cost Estimator Tool & Customer Service Calls**

76.     In September 2019, Plaintiff sought a price estimate for lab tests using United's online cost estimator tool. He obtained estimates for services from the physician practice at East Market Health Center, not the lab draw site operated by Sentara RMH Medical Center at East Market Health Center. Ex. C, Letter from Pl. to United (Sept. 29, 2019) (listing "Sentara Rmh East Market Hlth Ctr (Family Practice, General Practice)" as the provider).

77.     The estimates Plaintiff received were:

- Complete Blood Count – CBC Test: $11

- Comprehensive Metabolic Panel Test: $14

Ex. C, Letter from Pl. to United (Sept. 29, 2019).

78.    Plaintiff included printouts of these cost estimates in his September 29 and November 13, 2019 letters, submitting his first and second level appeals of the claim determination. Ex. C, Letter from Pl. to United (Sept. 29, 2019); Ex. F, Letter from Pl. to United (Nov. 13, 2019).

79.    Plaintiff never sought a cost estimate for the venipuncture before receiving services on September 10, 2019. Ex. WW, Pl. Dep. Tr. at 186:11–187:8.

80.    The printouts Plaintiff included in his appeal letters include the following disclaimer:

> The cost estimates on this page are based on average charges for in-network providers within a specific geographic market. Your actual costs may be higher or lower than these cost estimates as a result of changes in the provider's contract or status, additional services that arise during the course of treatment, or for other reasons. Check with your provider and health plan details to confirm the costs . . .

Ex. F., Letter from Pl. to United (Nov. 13, 2019); Ex. C, Letter from Pl. to United (Sept. 29, 2019).

81.    In full, the cost estimate website disclaimer reads:

> The cost estimates on this page are based on average charges for in-network providers within a specific geographic market. Your actual costs may be higher or lower than these cost estimates as a result of changes in the provider's contract or status, additional services that arise during the course of treatment, or for other reasons. Check with your provider and health plan details to confirm the costs that you may be charged for a service or procedure. . . . Neither payments nor benefits are guaranteed.

*See, e.g.*, Ex. H, Letter from Pl. to United (Nov. 29, 2021).

82.    Plaintiff knew the estimates he obtained through United's cost estimator tool were

estimates only:

> I obviously read the piece about it being an estimate when I go do
> this [use the estimator]. . . . I completely understand how you have
> different contracts with different providers. I've been through this
> so many times with so many insurance companies and providers. So
> I'm aware of this . . .

Ex. KK, Transcript of Pl.'s Call with United (Sept. 20, 2019) at 8:18–20, 11:8–12 (audio on file

with the Clerk of Court); *see also* Ex. WW, Pl. Dep. Tr. at 143:16–144:10, 184:19–186:6.

83.    In June 2021, Plaintiff again sought estimates for lab tests using United's online

cost estimation tool. He obtained estimates for services to be performed by the physician practice

at South Main Health Center, not the lab draw site operated by Setara RMH Medical Center at

South Main Health Center. Ex. H, Letter from Pl. to United (Nov. 29, 2021) (listing "Sentara Rmh

South Main Health Center, Family Practice" as the provider).

84.    The estimates Plaintiff obtained were:

- Complete Blood Count – CBC Test: $5

- Comprehensive Metabolic Panel Test: $7

Ex. H, Letter from Pl. to United (Nov. 29, 2021).

85.    Plaintiff submitted printouts of the cost estimates he obtained from the United

website with his November 29, 2021 letter to United, submitting his first-level appeal of United's

claim determination. Ex. H, Letter from Pl. to United (Nov. 29, 2021).

86.    The printouts Plaintiff submitted with his appeal letters include the following

disclaimer:

> The cost estimates on this page are based on average charges for in-
> network providers within a specific geographic market. Your actual
> costs may be higher or lower than these cost estimates as a result of
> changes in the provider's contract or status, additional services that
> arise during the course of treatment, or for other reasons. Check with

your provider and health plan details to confirm the costs that you
may be charged for a service or procedure. . . . Neither payments nor
benefits are guaranteed.

Ex. H, Letter from Pl. to United (Nov. 29, 2021).

87.    Plaintiff also called United to obtain estimates for his blood work on June 17, 2021.
United Online Routing System Record, ECF No. 67-1. After Plaintiff struggled to determine the
right Sentara entity for which he was requesting cost estimates, he offered to Google the address
and advise the United customer service representative of the results, noting that the provider was
a family practice "in [his] doctor's office." Ex. LL, Transcript of Pl. Call to United (June 17, 2021)
at 2:9–6:6 (audio produced at UHC0002414). The United representative identified RMH Medical
Group as a provider at the South Main Health Center and asked Plaintiff to confirm that the family
practice would be "the ones . . . doing the labs." *Id.* at 3:15–18, 5:10–14. Plaintiff confirmed that
was correct. *Id.* at 5:10–15.

88.    The United representative located the fee schedule for the family practice RMH
Medical Group operated at the South Main Health Center address (Fee Schedule 75222)—not the
lab draw site operated by Sentara RMH Medical Center at South Main Health Center—and shared
the following cost estimates for the CPT codes Plaintiff provided:

- Comprehensive Metabolic Panel (80053): $7.04

- Assay of Magnesium (83735): $4.46

- Complete Blood Count w/ Differential (85025): $5.18

*Id.* at 7:1–8:2. The United representative advised Plaintiff that these costs were estimates multiple
times. *Id.* at 7:12–13, 7:21–22, 8:17–9:5.

89.    Plaintiff never asked which Sentara entity would be providing the services he
received on September 10, 2019 and June 21, 2021. Ex. WW, Pl. Dep. Tr. at 134:7–9.

90. Plaintiff has no firsthand knowledge about how United programmed its online cost estimator tool or how United trained its customer service representatives to use fee schedules. Ex. WW, Pl. Dep. Tr. at 125:14–126:24, 127:20–13.

I. **Plaintiff's September 10, 2019 Visit to Sentara East Market Health Center**

91. On September 10, 2019, Plaintiff visited Sentara East Market Health Center for a blood draw for laboratory testing his physician previously ordered. Sentara Defs.' Answer to Pl.'s SAC, ECF No. 119 at Pg. ID 1830, ¶ 54; Ex. U, 2019 OP Visit Report .

92. The blood sample was collected at 8:03 AM by Conner Henry-Morgan. Ex. U, 2019 OP Visit Report.

93. At the time of the collection, Sentara RMH Medical Center employed Henry-Morgan. Ex. DDD, Sentara RMH Medical Center's Supp. Answers to Pl.'s Second Set of Interrogs. No. 7 (Aug. 14, 2024).

94. At 11:41 AM, Sentara RMH Medical Center's main hospital location received Plaintiff's blood sample, where the lab analyses were performed. Ex. U, 2019 OP Visit Report; Ex. DDD, Sentara RMH Medical Center's Suppl. Answers to Pl.'s Second Set of Interrogs. No. 9 (Aug. 14, 2024).

95. The results of Plaintiff's laboratory testing were sent to him that day. Ex. U, 2019 OP Visit Report. Plaintiff received the letter which reported "results for orders placed or performed during the hospital encounter of 9/10/19." *Id.* Plaintiff never asked Sentara why the results identified a "hospital encounter." Ex. WW, Pl. Dep. Tr. at 196:2–9. Plaintiff received another letter dated November 26, 2019, which again reported "results for orders placed or performed during the hospital encounter of 9/10/19." Ex. U, 2019 OP Visit Report. Plaintiff again did not ask Sentara why the letter referenced a "hospital encounter." Ex. WW, Pl. Dep. Tr. at 56:4–18.

96.    Plaintiff does not contest he received laboratory services on September 10, 2019.

Ex. WW, Pl. Dep. Tr. at 194:19-21.

97.    Sentara RMH Medical Center then submitted an outpatient hospital bill to United

on a UB-04 facility claim form for these services. Ex. T, Claim for 2019 Lab Work.

98.    The claim listed the billing provider as Sentara RMH Med Ctr, address as "2010

Health Campus Drive, Harrisonburg, Virginia 22801," and the federal tax ID number as

"█████6331." Ex. T, Claim for 2019 Lab Work.

99.    The claim form listed the following CPT[4] codes:

- 36415 – Routine Venipuncture

- 80053 – Comprehensive Metabolic Panel

- 85025 – Complete Blood Count with Auto Differential White Blood Count

Ex. T, Claim for 2019 Lab Work.

100.    United processed the claim and issued an Explanation of Benefits ("EOB") to

Plaintiff on September 30, 2019, outlining the total amount Sentara RMH Medical Center billed

for the services ($159.00) and the Plan Discount applied ($6.36). Ex. E, EOB (Sept. 30, 2019) .

101.    Because Plaintiff had not satisfied his deductible, the EOB advised that he owed

$152.64 for these services. *Id.*

102.    United issued a Provider Remittance Advice ("PRA") to Sentara RMH Medical

Center for the services Plaintiff received on September 10, 2019. The PRA listed the following

amounts charged and allowed for each of the services:

- 36415 – $31.00/$29.76

---

[4] CPT (Current Procedural Terminology) codes are standardized numerical codes used in the healthcare industry to identify medical services and procedures. Ex. ZZ, Kahan Report ¶¶ 28–29; *Peters v. Aetna, Inc.*, 2 F.4th 199, 210 n.2 (citation omitted). "It is 'the most widely accepted' system of coding 'under government and private health insurance programs.'" *Peters*, 2 F.4th at 210 n.2 (citation omitted).

- 80053 – $74.00/$71.04

- 85025 – $54.00/$51.84

- Total – $159.00/$152.64

Ex. Y, Provider Remittance Advice (Sept. 20, 2019).

103.    United's adjudication of the claim Sentara RMH Medical Center submitted for the September 10, 2019 services it provided to Plaintiff was consistent with healthcare industry claims adjudication standards. Ex. ZZ, Kahan Report ¶¶ 19, 37, 42.

104.    The bill Plaintiff received from Sentara for these services noted that "[c]harges on the front of this statement are for hospital or other off-site services." Ex. W, Sentara Healthcare Statement (Oct. 1, 2019).

105.    On September 2, 2020, Plaintiff notified the Sentara Defendants that he had "a dispute with [his] insurance company regarding the amount of the [bill for the September 10, 2019 service." Ex. GGG, Letter to Sentara (Sept. 2, 2020). Plaintiff did not disclose any dispute he had with the Sentara Defendants. *Id.*; Ex. WW, Pl. Dep. Tr. at 43:15–44:17. On the same day, Plaintiff sent a similar letter to United Healthcare, stating that he had a dispute with "[his] hospital" regarding the amount of the bill for the September 10, 2019 service. Ex. HHH, Letter to United (Sept. 2, 2020).

106.    Plaintiff paid Sentara RMH Medical Center $152.64 for the laboratory services he received on September 19, 2019. Ex. WW, Pl. Dep. Tr. at 63:5–13.

## J.    Plaintiff's June 21, 2021 Visit to South Main Medical Center

107.    On June 21, 2021, Plaintiff visited the South Main Medical Center for a blood draw, for laboratory tests his physician previously ordered. Sentara's Answer to SAC, ECF No. 119 at Pg. ID 1833 ¶ 84; Ex. AA, 2021 OP Visit Report.

108. The blood sample was collected at 7:57 AM by Brittney Dawn Townsend. Ex. AA, 2021 OP Visit Report.

109. At the time of the collection, RMH Medical Group employed Townsend as a certified Medical Assistant. Ex. DDD, Sentara RMH Medical Center's Suppl. Answer to Pl.'s Second Set of Interrogs. No. 8 (Aug. 14, 2024); Ex. V, Townsend Medical Assistant Certificate.

110. At 11:31 AM, Sentara RMH Medical Center's main hospital location received the blood sample, where all the lab analyses were performed. Ex. AA, 2021 OP Visit Report.

111. The results of Plaintiff's laboratory testing were sent to him on June 22, 2021. Ex. AA, 2021 OP Visit Report. Plaintiff received the letter which reported "results for orders placed or performed during the hospital encounter of 6/21/21." *Id.*

112. Plaintiff does not contest he received laboratory services on June 21, 2021. Ex. WW, Pl. Dep. Tr. at 49:9-50:4.

113. Sentara RMH Medical Center again submitted an outpatient hospital bill to United on a UB-04 facility claim for these services and indicated that Sentara RMH Medical Center performed the services. Ex. Z, Claim for 2021 Lab Work.

114. The claim listed the provider as Sentara RMH Med Ctr, address as "2010 Health Campus Drive, Harrisonburg, Virginia 22801," and the federal tax ID number as "███6331." Ex. Z, Claim for 2021 Lab Work.

115. The claim included four CPT codes:

- 36415 – Routine Venipuncture

- 80053 – Comprehensive Metabolic Panel

- 83735 – Assay of Magnesium

- 85025 – Complete Blood Count with Auto Differential White Blood Count

Ex. Z, Claim for 2021 Lab Work.

116.    United processed the claim and sent Plaintiff an EOB on July 12, 2021. Ex. I, EOB
(July 12, 2021). The EOB informed Plaintiff of the total amount billed for these services ($231.00)
and the Plan Discount applied ($9.24). *Id.*.

117.    Because Plaintiff had not satisfied his deductible, the EOB advised that he owed
$221.76. *Id.*

118.    United issued a PRA to Sentara RMH Medical Center for the services Plaintiff
received on June 21, 2021. The PRA listed the following amounts charged and allowed for each
of the services:

- 36415 – $35.00/$33.60

- 80053 – $82.00/$78.72

- 83735 – $54.00/$51.84

- 85025 – $60.00/$57.60

- Total – $231.00/$221.76

Ex. BB, Provider Remittance Advice (June 21, 2021).

119.    Plaintiff never paid any amount for laboratory services received on June 21, 2021.
Ex. EEE, Pl.'s Resp. to Sentara RMH Medical Center RFA No. 3 (Sept. 18, 2024).

120.    Sentara RMH Medical Center attests that it will not, nor will any other Sentara
entity, pursue collection or otherwise demand payment for laboratory services rendered on June
21, 2021. Ex. YY, Noga Decl. ¶ 9.

**K.** **Plaintiff's Administrative Appeals**

121.    Plaintiff submitted his first level appeal of United's claim determination for the September 10, 2019 services on September 29, 2019. Ex. C, Letter from Pl. to United (Sept. 29, 2019).

122.    United responded to Plaintiff's appeal on October 23, 2019. Ex. D, Letter from United to Pl. (Oct. 23, 2019). United advised Plaintiff that the claim had been reviewed and was determined to have been processed according to Plaintiff's Plan. *Id.* United explained that it is "required to process claims according to the information submitted by the provider of service" and confirmed that "this service(s) is not eligible for payment as [he] requested." *Id.*

123.    Plaintiff submitted his second level appeal on November 13, 2019. Ex. F, Letter from Pl. to United (Nov. 13, 2019).

124.    United responded to Plaintiff's second level appeal on November 29, 2019. Ex. G, Letter from Letter from United to Pl. (Nov. 29, 2019). United advised Plaintiff that the claim had been reviewed and was determined to have been processed according to Plaintiff's Plan. *Id.* Although Plaintiff complained that "myuhc.com showed incorrect benefit information," United did not identify any "inaccurate information on the website" but reiterated that "information on the website is not a guarantee of payment." *Id.*

125.    For the June 21, 2021 services, Plaintiff submitted his first level appeal of United's claim determination on November 29, 2021. Ex. H, Letter from Pl. to United (Nov. 29, 2021) . Plaintiff complained, "MY EOB . . . lists the provider as 'Sentara RMH Medical.' That's not where I went." *Id.* His letter included printouts of cost estimates for "Sentara RMH South Main Health Center, Family Practice," and a copy of his Sentara billing account summarizing his "Walk In Lab Visit at South Main Health Center Registration" for "Hospital Services." *Id..*

126.    United responded to Plaintiff's appeal on January 7, 2022. Ex. J, Letter from United to Pl. (Jan. 7, 2022). United advised Plaintiff that it "carefully reviewed the documentation submitted, our payment policies and the limitations, exclusions, and other terms of [Plaintiff's] Benefit Plan," and "confirmed . . . that this service(s) [was] not eligible for payment as [he] requested." *Id.* United explained that its records did "not indicate that [Plaintiff] w[as] given incorrect information regarding [his] medical benefits" by a UnitedHealthcare Customer Service Representative and "recommend[ed] [Plaintiff] verify the details with [his] provider and Customer Care before [he] receive[s] services or supplies." *Id.* United further explained that "UnitedHealthcare is responsible for considering the claim as it is submitted and in accordance with the provisions of [Plaintiff's] Plan," adding:

> We are required to process claims according to the information submitted by the provider of service. We use the provider's name, group practice name, address, telephone number, and tax identification number to determine a provider's contract status. We are also required to use the procedure and diagnosis codes submitted on the claim. If any of the information on the claim is incorrect, a corrected bill must be submitted for consideration.

*Id.*

127.    Plaintiff submitted his second level appeal on March 7, 2022. Ex. K, Letter from Pl. to United (Mar. 7, 2022).

128.    United responded to Plaintiff's second-level appeal on March 22, 2022. Ex. L, Letter from United to Pl. (Mar. 22, 2022). United advised Plaintiff that the claim had been reviewed and was determined to have been processed according to Plaintiff's Plan. *Id.*.

129.    In response to a request for the documents and records relevant to the "information given [to Plaintiff] by [United's] Customer Service Representative," on March 26, 2022, United sent Plaintiff a copy of his Plan documents, the EOB, claim image, an "Ors" (online routing

system) record, and copies of the appeal correspondence. Ex. M, Letter from United to Pl. (Mar. 26, 2022). In its cover letter, United reiterated:

> Estimates provided by the myHealthcare Cost Estimator are not intended to be an exact calculation of claim payment and member responsibility that may result from healthcare services received. We recommend you verify the details with your provider and Customer Care before you receive services or supplies.

Ex. M, Letter from United to Pl. (Mar. 26, 2022).

## L.    **Plaintiff's Unsuccessful Virginia Board of Insurance Complaints**

130.    After lodging several unsuccessful appeals with United, Plaintiff filed a complaint with the Virginia Bureau of Insurance ("Bureau") in December 2019 about United's cost estimator and the extent to which he believed it was wrong. Ex. N, Pl.'s Va. Bureau of Ins. Compl. (Dec. 14, 2019). Plaintiff wrote that United's cost estimator provided him a "range of prices for the same service" at locations in his zip code, including "RMH's East Market Street location," which listed the price for lab services as $25. *Id.*. Plaintiff complained that "UHC then processed [his] claim to allow RMH to bill [him] $152.64" and when he appealed the claim, United "insisted that the information they provided was accurate." *Id.* Plaintiff asked the Bureau to ensure "[t]hat UHC reprocess the claim at the negotiated rates they quoted [him] so that [he would be] billed $25, as originally quoted." *Id.*

131.    In its December 24, 2019 letter responding to the Bureau's inquiry regarding Plaintiff's complaint, United explained:

> The cost estimate tool Mr. Swartzendruber referenced in the complaint provides an estimate of what charges may be and is not a guarantee of payment. UnitedHealthcare is required to process claims as billed by the provider according to our member's plan benefits. Additionally[,] the cost estimate tool specifically states: *Your actual costs may be higher or lower than the cost estimates as a result of changes in the provider's contract or status, additional services that arise during the course of treatment, or for other reasons.*

Ex. O, United Letter to Va. Bureau of Ins. (Dec. 24, 2019) (emphasis in original). United further

explained:

> According to Mr. Swartzendruber's Certificate of Coverage (COC),
> network laboratory services are covered at 80% of eligible expenses
> and the annual deductible applies. UnitedHealthcare received the
> original electronic claim submission on September 16, 2019, from
> Sentara RMH Medical Center billing $159.00 for the outpatient
> laboratory services received September 10, 2019. On September 17,
> 2019, we processed the claim according to Mr. Swartzendruber's
> network benefit level by allowing Sentrara RMH Medical Center's
> contracted rate of $152.64. We did not issue a payment as we applied
> the allowed amount to Mr. Swartzendruber's network deductible
> requirement as it had not been met. The health care provider's
> contractual discount is $6.36.

*Id.*. United stated that it had reviewed Plaintiff's first and second level appeals of the claim and

upheld its original claim determination each time, as United's "investigation confirmed we

processed the original claim correctly according to the member's network benefits." *Id.*.

132.    The Bureau responded to Plaintiff's complaint on December 31, 2019. Ex. P, Letter

from Va. Bureau of Ins. to Pl. (Dec. 31, 2019). The Bureau explained that after reviewing his

complaint, United's response, and Plaintiff's Plan, including the Schedule of Benefits, it

determined that United "processed [the] claim according to [his] policy's provision." *Id.* The

Bureau further explained that "[a]s a regulatory agency, [it] cannot direct a company to pay a claim

outside the policy's provisions; therefore, [it] cannot direct the company to pay $152.64, as

[Plaintiff] requested." *Id.*

133.    Plaintiff also lodged another complaint with the Bureau regarding United's cost

estimator, estimates received from a United customer service representative, and the processing of

the June 21, 2021 claim. Ex. Q, Pl.'s Va. Bureau of Ins. Compl. (May 7, 2022). Plaintiff asserted

that he "had the labs done at the South Main Health Center" and United "allowed my provider to

charge 13x more than the quote [he] was given" from United's customer service representative and

online cost estimator tool. *Id.* Plaintiff complained that United "has repeatedly given its insureds false information about its negotiated rates with Sentara" and "falsely claims that [its] records do not show [he] was given incorrect information," which the claim appeal records show is "false." *Id.*

134.    In its May 13, 2022 letter to the Bureau responding to Plaintiff's complaint, United explained:

> UnitedHealthcare received the original electronic claim submission on June 28, 2021, from Sentara RMH Medical Center billing $231.00 for June 21, 2021. We processed the claim by allowing the provider's contracted rate of $221.76. The total member responsibility of $221.76 applied to the network deductible. The health care provider's contractual discount is $9.24. . . .
>
> The member's complaint provides rates he was provided during a phone call with UnitedHealthcare prior to obtaining these services, along with a printout from our cost estimator tool. Although Mr. Swartzendruber was provided rates lower than what was used for processing of the claim, the member should note that the rates provided were estimates and the claim subsequently was processed following the provider's contract and his health benefit plan. UnitedHealthcare cannot pay a contracted provider less than their legally binding rate. The claim has been processed with the provider's contracted rate and the allowed amount correctly applied to the member's deductible. In conclusion, we processed the claim correctly according to the provider's contracted rate and the member's benefit plan.

Ex. R, Letter from United to Va. Bureau of Ins. (May 13, 2022).

135.    In a subsequent letter, the Bureau asked United for additional information about United's cost estimator tool. United's response letter addressed the discrepancy between the cost estimates Plaintiff obtained and the amounts ultimately allowed for the services:

> UnitedHealthcare's review shows that the estimate returned on the cost estimator tool, and the actual claim for the services, received by the member, were different for different providers. The variation in the amounts from the estimate and how the claim actually processed is because *the estimate received by the member was not for the same provider billing the claim*. The provider that billed the claim was

> Sentara RM[H] Medical Center. If the member looks at the cost estimates for these services for Sentara RM[H] Medical Center, he will find that they very closely align with the claim for the services received.

Ex. S, Letter from United to Va. Bureau of Ins. (Aug. 17, 2022) (emphasis added).

136.    On August 19, 2022, the Bureau notified Plaintiff it was closing his complaint:

> United Healthcare of The Mid-Atlantic, Inc. (UHC) indicates their Cost Estimator Tool (CET), providers and the actual claim for the services render were by a different provider. They indicated your service provider that submitted your claim is from Sentara RM[H] Medical Center. Whereas the correspondences you submitted shows the estimation for RMH South Main Health Center, thus, the variation in the amounts. . . .

> UHC also indicated by looking at the CET for these services for Sentara RM[H] Medical Center, there is a close alignment with the claim for the services received. Under current regulations with the Commonwealth of Virginia it does not appear, at this time, UHC has violated any laws.

SAC, ECF No. 112 at Pg. ID 1750.

Respectfully submitted this 31st day of January, 2025,

/s/ Rochelle-Leigh Rosenberg

Rochelle-Leigh Rosenberg
VA Bar No. 85531
Chris Flynn (admitted *pro hac vice*)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
RRosenberg@crowell.com
CFlynn@crowell.com

*Counsel for Defendants United Healthcare
Insurance Company and United
HealthCare of the Mid-Atlantic, Inc.*

/s/ Belinda D. Jones

Belinda D. Jones
VA Bar No. 72169
Henry I. Willett III
VA Bar No. 44655
**CHRISTIAN & BARTON, LLP**
901 East Cary Street, Suite 1800
Richmond, VA 23219
Telephone: (804) 697-4130
Facsimile: (804) 697-6130
BJones@cblaw.com
HWillett@cblaw.com

*Counsel for Defendants Sentara RMH Medical
Center and RMH Medical Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 12, 2025, I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Western District of Virginia by using the Court's CM/ECF system. I certify that all other participants in this case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

Dated: June 12, 2025                    */s/ Rochelle-Leigh Rosenberg*
                                        Rochelle-Leigh Rosenberg